James B. MELLON and Midway Lanes, Inc., Plaintiffs and Appellants,

v.

NORWEST BANK OF MANDAN, NORTH DAKOTA, N.A., Defendant and Appellee.

Civ. No. 920127.

Supreme Court of North Dakota.

Dec. 22, 1992.

Utilities, 466 N.W.2d 813 (N.D.1991). Our recitation of the facts reflects that principle.

Mellon is the president and principal shareholder of Midway, a North Dakota corporation, which operates a bowling center in Mandan. In 1985, Midway executed a promissory note, payable to the order of Norwest in the principal sum of approximately $1,237,000. As security for repayment of the note, Midway mortgaged the bowling center to Norwest and executed a security agreement, granting Norwest a security interest in Midway's inventory, fixtures, accounts and other rights to payment. In 1987, Midway was unable to make payments on its indebtedness to Norwest and Norwest commenced an action against Midway to foreclose its mortgage and security interest.

Negotiations ensued and the foreclosure action eventually was settled in February 1988. The settlement agreement provided, inter alia, that Midway would convey the bowling center to Norwest in exchange for Norwest's cancellation of Midway's indebtedness. Norwest also agreed to give Midway an option to purchase the property. A written lease agreement was then executed specifying, in relevant part, that Midway was entitled to rent the premises for twenty months and that it could purchase the property for $600,000, provided it did not default on any of the scheduled rent payments.

Midway made several of the rent payments but failed to make the July, August and September, 1989, payments. Consequently, Norwest notified Midway on September 18, 1989, that Midway was in default and that the lease was terminated. Norwest also advised Midway that the option to purchase was terminated, due to the default and demanded surrender of the bowling center by November 1, 1989.

Midway met with Norwest on November 2, 1989, to discuss alternatives to its eviction from the bowling center. Afterward, Norwest agreed to sell the premises to Midway for $500,000 or, if purchased with Norwest financing, at a price of $600,000. In addition, Norwest agreed to extend the

Ramon A. Robideaux, Rapid City, SD, and Daniel H. Oster of Rosenberg Law Firm, Bismarck, for plaintiffs and appellants.

Lauris Molbert of Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for defendant and appellee.

LEVINE, Justice.

James B. Mellon and Midway Lanes, Inc. (collectively, "Midway"), appeal from a summary judgment dismissing their complaint against Norwest Bank of Mandan ("Norwest"). We affirm.

In an appeal from an order granting summary judgment, we view the evidence in a light most favorable to the party who opposed the motion and give that party the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Bourgois v. Montana–Dakota*

date of surrender to December 1, 1991. However, on November 7, 1991, Midway contacted Norwest and made an oral offer of $450,000 for repurchase of the bowling center. Midway claimed that Norwest's response to the offer was: "If you can raise 450, bring it in ... and put it on [the] table." This response was deemed by Midway a binding acceptance of its offer.

Approximately two weeks later, at a meeting convened at Norwest's request, Norwest told Midway that Midway's $450,000 offer was unacceptable, instead demanding $475,000 for the bowling center. Apparently, Midway protested the $25,000 increase but, after seeking advice of counsel, raised the additional funds demanded by Norwest.

On December 27, 1989, the parties closed the sale. Midway, despite renewing its objection to the $25,000 price increase, tendered $475,000 to Norwest. Midway then reviewed, for the first time, the sale contract Norwest had prepared in anticipation of the closing. The contract stipulated that Midway was to be responsible for real estate taxes, penalties and interest pertaining to the bowling center, and also contained mutual releases precluding each from pursuing any claim against the other as of the date of execution. Although it protested the provision saddling it with liability for the bowling center's real estate taxes, Midway, nevertheless, signed the contract and, in turn, received from Norwest the deed to the bowling center. Immediately thereafter, Midway handed Norwest a handwritten letter, previously prepared on advice of counsel, denouncing what Midway characterized as Norwest's "bad faith" with respect to the $25,000 price increase.

In February 1991, Midway filed a complaint against Norwest, seeking damages for breach of contract, fraud and deceit, constructive fraud and intentional infliction of emotional distress. Norwest answered and subsequently moved for summary judgment, arguing that although it disputed Midway's claims against it, those claims "were released as part of the terms of the sale of the [bowling center]." Midway resisted summary judgment, alleging that it did not, due to "economic duress" and a variety of other factors, intend to release its claims against Norwest.

The district court rejected Midway's contentions, finding it intended to release its claims against Norwest because it "was aware of the existence of the releases in the agreement, knew their consequences, and executed the document which contained those releases. Having done so, [it] cannot disavow [its] own statements by arguing that even though [it] knew what [it] was signing [it] had no ... intention of honoring the releases or the agreement generally. A hidden mental reservation is irrelevant." Additionally, the court, noting its uncertainty about whether this court has embraced the doctrine of "economic duress," analyzed the doctrine and determined it inapplicable on the facts described by Midway. The court, therefore, granted summary judgment in favor of Norwest and dismissed Midway's complaint with prejudice. Midway appealed.

"Under Rule 56, NDRCivP, a movant for summary judgment must show that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to judgment as a matter of law." *Bourgois*, 466 N.W.2d at 816; *Bykonen v. United Hospital*, 479 N.W.2d 140 (N.D.1992).

On appeal, the parties do not dispute that Midway reviewed and fully understood the implications of the terms of the sale contract it entered into with Norwest, including the release of its claims against Norwest. They also do not dispute that the wrongful conduct, alleged by Midway, occurred prior to execution of the contract. Accordingly, it appears, at first blush, that the parties entered into an enforceable contract, *see* NDCC §§ 9–01–01, 9–01–02, the terms of which preclude Midway's initiation of this lawsuit, and that the trial court properly awarded summary judgment in favor of Norwest. However, Midway, urging this court to adopt the doctrine of "economic duress," argues that the release it signed is unenforceable because Midway's consent to the agreement was not freely

given due to the economic coercion exerted upon it by Norwest.

■ The question of whether the facts alleged by a party are sufficient to constitute a defense of duress is one of law. *Production Credit Ass'n of Minot v. Geving*, 218 N.W.2d 185 (N.D.1974). *See also, Oskey Gasoline & Oil Co., Inc., v. Continental Oil Co.*, 534 F.2d 1281 (8th Cir. 1976). The doctrine of economic duress has not been expressly adopted in North Dakota as a defense to the enforcement of a contract. *See, Geving, supra; First State Bank of Buxton v. Thykeson*, 361 N.W.2d 613 (N.D.1985); NDCC §§ 9–03–05, 1–01–06. *But see Jamestown Farmers Elevator, Inc. v. General Mills, Inc.*, 552 F.2d 1285, 1290 n. 5 (8th Cir.1977); *Centric Corp. v. Morrison–Knudsen Co.*, 731 P.2d 411 (Okla.1986) [Oklahoma duress statute virtually identical to NDCC § 9–03–05 interpreted to embrace economic duress].

We need not determine whether NDCC § 9–03–05 encompasses "economic" duress, because we conclude that even if it were so interpreted, Midway cannot, as a matter of law, establish the necessary elements of the defense.

■ In *Geving*, we held that economic duress consists of wrongful pressure or coercion and "is not established merely by proof that consent was secured by the pressure of financial circumstances, or by the fact that one party insisted upon a legal right and the other party yielded to such insistence." 218 N.W.2d at 196. More specifically, however, one challenging the validity of a contract on the ground of economic duress must establish three elements:

"(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Oskey Gasoline, supra* at 1286 (quoting *W.R. Grimshaw Co. v. Nevil C. Withrow Co.*, 248 F.2d 896, 904 (8th Cir. 1957)), *cert. denied*, 356 U.S. 912, 78 S.Ct. 669, 2 L.Ed.2d 585 (1958).

■ We are convinced, as was the trial court, that Midway cannot meet its burden of satisfying element two of the three-part *Oskey Gasoline* test of economic duress, *i.e.*, that Midway had no alternative but to accept the price increase and sign the contract. We quote with approval the district court's analysis:

"It can be argued that even though the bank did not create Mr. Mellon's problem, it should not be allowed to arbitrarily (according to Mr. Mellon) raise the purchase price $25,000. If the situation was as Mr. Mellon described and his choice was difficult because of the situation, suing for breach of contract is not an effective remedy. In the breach of a contract to sell real estate there is normally no monetary damage to the buyer. If, however, a buyer, as in this case, suggests that there are special circumstances involved, an action for specific performance is the appropriate remedy. [This alternative] was suggested [ ] at oral argument and the response was that such a remedy was not viable because until the action was resolved the business plaintiff was operating within the building would be terminated to the irreparable injury of the plaintiffs.... Solving that kind of apparent dilemma, however, is exactly why temporary injunctions are available....

.     .     .     .     .

"All plaintiffs needed to do was to tender the disputed $25,000 or deposit it in court, sue for specific performance or for declaratory judgment and request an injunction [pursuant to NDCC § 32–06–02(2) ]. The bank's rights would have been fully protected and in the interim the business could continue to operate, as a temporary injunction maintaining the status quo most certainly would have been issued in this situation. Rather than do this, Mr. Mellon signed the agreement, obtained the deed to the property and immediately [thereafter] ... disavowed [that contract]."

■ Ordinarily, specific performance of the oral contract, the alternative remedy suggested by the trial court, would not be

available because an oral contract for the sale or transfer of real estate violates the statute of frauds and, therefore, is not subject to specific performance. *Green v. Gustafson,* 482 N.W.2d 842 (N.D.1992); *Williston Cooperative Credit Union v. Fossum,* 459 N.W.2d 548 (N.D.1990); NDCC §§ 9–06–04, 47–10–01. Here, however, Midway has alleged fraud, deceit, and constructive fraud, and we have said that the statute of frauds is intended to prevent fraud and perjury and should not be used as an instrument to accomplish fraud. *Framers Cooperative Ass'n of Churches Ferry v. Cole,* 239 N.W.2d 808 (N.D.1976). To that end, if Midway proves its claims of fraud, Norwest would be estopped from raising the statute of frauds as a defense to specific performance of the alleged oral contract. *See Lohse v. Atlantic Richfield Co.,* 389 N.W.2d 352 (N.D.1986); *Cooke v. Blood Systems, Inc.,* 320 N.W.2d 124 (N.D. 1982); *O'Connell v. Entertainment Enterprises, Inc.,* 317 N.W.2d 385 (N.D.1982); *Cole, supra; Dangerfield v. Markel,* 222 N.W.2d 373 (N.D.1974). Therefore, we agree that Midway had an alternative to signing the sale contract.

Accordingly, under the circumstances of this case, Midway's consent to release Norwest was not obtained as a result of economic duress, but was freely, albeit reluctantly given. As a result, Midway is precluded from maintaining its lawsuit against Norwest. We, therefore, affirm the district court's summary judgment dismissal of Midway's complaint.

ERICKSTAD, C.J., and VANDE WALLE, JOHNSON and MESCHKE, JJ., concur.