2009 ND 78

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Timothy Carlton SAULTER, Defendant and Appellant.**

**No. 20080220.**

Supreme Court of North Dakota.

April 30, 2009.

Meredith Huseby Larson (on brief), Assistant State's Attorney, Christopher S. Pieske (argued), third-year law student, and Haley L. Wamstad (appeared), Assistant Attorney General, Grand Forks, N.D., for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Timothy Saulter appeals a criminal judgment entered after he was found guilty of aggravated assault following a bench trial. Saulter argues the district court abused its discretion by admitting a law enforcement officer's expert witness testimony as lay witness opinion testimony. Although the district court abused its discretion by admitting the officer's testimony as lay witness opinion testimony, we conclude the error was harmless, and we affirm.

I

[¶ 2] On January 17, 2008, Saulter was charged by information with aggravated assault under N.D.C.C. § 12.1–17–02(1), a class C felony, alleging Saulter hit, kicked and lifted Jade Tandeski off the ground by her neck, willfully causing serious bodily injury. The information was amended to charge Saulter with aggravated assault, alleging he willfully caused serious bodily injury to Tandeski by strangling her causing an impairment of airflow or blood flow to her brain or lungs. In February 2008, Saulter filed a demand for discovery under N.D.R.Crim.P. 16. The State did not disclose it planned to present any expert witness opinion testimony at trial.

[¶ 3] A bench trial was held on July 16, 2008. The State claimed Saulter picked Tandeski up by her throat, causing an impediment of airflow or blood flow to her brain or lungs. Tandeski testified she got into a physical altercation with Saulter at her apartment on January 15, 2008. Tandeski testified she was in her bedroom when Saulter became upset and threw her on the bed ripping her shirt. She said she got up from the bed, but Saulter grabbed her by her throat with one hand, and she hit a wall. She testified she was able to get away, but Saulter grabbed her by her throat a second time using both hands, lifted her off her feet and threw her into the closet doors, which were damaged. Tandeski said she tried to get away again, but Saulter grabbed her arm, threw her on the ground in front of the door to her son's bedroom and then kicked her arm. She testified they continued fighting until they reached the door to her apartment and Saulter left. Tandeski testified that she had a hard time breathing and her throat was tight and hurt when Saulter had

grabbed her and lifted her off the ground and that her neck was stiff and swollen after the incident. Tandeski also testified about inconsistencies between her testimony at trial and her statements to police after the incident, including inconsistencies about how many times Saulter grabbed her throat and whether he used one hand or two.

[¶ 4] Tandeski's son testified he was in the apartment at the time of the incident and he heard his mom crying and a noise sounding like someone hitting something. He also testified he opened his bedroom door and saw Saulter hit his mother on the floor in front of his door. Amanda Sawyer, Tandeski's friend, testified that she heard the altercation occurring after receiving a phone call from Tandeski's cell phone and that she went to Tandeski's house immediately after the incident.

[¶ 5] There was testimony from Grand Forks Police Officers Jason Dvorak and Dustin Beseke, who interviewed Tandeski the day after the incident. Dvorak testified he observed an injury on the left side of Tandeski's neck that looked like a hand print around her neck or a red mark that looked like the outline of a finger, which he testified was consistent with Tandeski's claims. Dvorak also testified he observed bruising on Tandeski's body and arms. Photographs of Tandeski's injuries and Tandeski's ripped shirt were admitted into evidence.

[¶ 6] Grand Forks Police Detective James Vigness testified about his interview of Tandeski, strangulation in general and symptoms of strangulation. Vigness testified he reviewed the police reports and then interviewed Tandeski on February 22, 2008, several weeks after the incident occurred. He testified about his interview of Tandeski, but most of his testimony was about strangulation in general. Saulter objected twice to Vigness's testimony arguing it was expert opinion testimony. The State claimed the testimony was lay witness opinion testimony. The district court overruled Saulter's first objection and stated Vigness could testify to his specialized knowledge, but advised Saulter he could object again if the testimony went beyond that of a lay witness and Vigness's training. The court sustained the second objection to prohibit any testimony quoting information from any special training Vigness had received. Saulter did not present any witnesses, but he argued that Tandeski's statements were inconsistent, that Tandeski was not a credible witness and exaggerated what occurred and that the evidence was only consistent with simple assault.

[¶ 7] The district court found Saulter was guilty of aggravated assault. The court made oral findings after announcing its decision:

"And I'm not going to summarize all of the evidence that supports this Court's finding, as it is already a matter of record. But of particular note, I do want to state that the evidence indicates that Miss Tandeski was grabbed around the neck, and whether it was one hand or two hands, is not determinative in this case. The fact is that as a result of the strangulation there was an impediment of airflow to either her brain or her lungs and impediment being a hand.

"And the Court does find that this strangulation is supported by such things as her difficulty in breathing, her stiff neck, her swollen neck, and her bruising and redness around her neck."

The court sentenced Saulter to five years in prison, with two years and six months suspended.

## II

[¶ 8] Saulter argues the district court erred in admitting Vigness's testimony as lay opinion testimony. Saulter claims Vigness's testimony was expert testimony and should have been disclosed before trial. Saulter also argues there is not sufficient evidence to support his conviction absent Vigness's opinion testimony.

[¶ 9] The decision whether to allow opinion testimony from either a lay witness or an expert witness is "within the district court's sound discretion and will not be reversed unless the court has abused its discretion." *State v. Streeper*, 2007 ND 25, ¶ 23, 727 N.W.2d 759. " 'A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misinterprets or misapplies the law.' " *City of Fargo v. Levine*, 2008 ND 64, ¶ 5, 747 N.W.2d 130 (quoting *Leet v. City of Minot*, 2006 ND 191, ¶ 7, 721 N.W.2d 398).

[¶ 10] The admission of lay opinion testimony is governed by N.D.R.Ev. 701, which provides:

"If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are (I) rationally based on the perception of the witness and (ii) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Rule 701, N.D.R.Ev., is an adoption of Fed.R.Evid. 701. N.D.R.Ev. 701, explanatory note. When a state rule is derived from a federal rule, the federal courts' interpretation of the rule is persuasive authority. *Levine*, 2008 ND 64, ¶ 7, 747 N.W.2d 130. The federal rule was amended in 2000 to include a requirement that lay opinion testimony could not be based on scientific, technical or other specialized knowledge that is within the scope of Fed. R.Evid. 702. The North Dakota Rule has not been amended to add similar language. The 2000 amendment, however, was not a substantive amendment, and it only clarified the distinction between lay and expert opinion testimony. *United States v. Perkins*, 470 F.3d 150, 155 n. 8 (4th Cir.2006); *United States v. Garcia*, 291 F.3d 127, 139 n. 8 (2d Cir.2002).

[¶ 11] The admission of expert testimony is governed by N.D.R.Ev. 702, which provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." "A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in the possession of the jurors.' " *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir.2000) (quoting Redden & Saltzburg, *Federal Rules of Evidence Manual* 225 (1975)).

[¶ 12] Lay opinion testimony is limited to testimony that is "rationally based on the perception of the witness." N.D.R.Ev. 701. This requires the witness to have observed the incident or have firsthand knowledge of the facts that form the basis for the opinion. Fed.R.Evid. 701 advisory committee's note. Furthermore, N.D.R.Ev. 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter[,]" except for expert witnesses who may give opinion testimony under N.D.R.Ev. 703 based on information made known to the expert at or before the proceedings. A lay witness offering an opin-

ion, therefore, must base an opinion on his or her perception or personal knowledge of the matter.

[¶ 13] In this case, Vigness testified his testimony was based on his review of the police reports and on his interview with Tandeksi weeks after the incident. Vigness did not observe the incident or Tandeksi's injuries. When an officer relies on all the information gathered in an investigation to offer lay opinion testimony, including information gathered by other officers, he is not presenting the jury with the unique insights of an eyewitness's personal perceptions as the rule intends. *See United States v. Garcia,* 413 F.3d 201, 211–12 (2nd Cir. 2005). Vigness's knowledge about this case came from reviewing the police reports created by other officers, interviewing Tandeski weeks after the incident and acquiring information during the trial. Vigness did not have personal knowledge of the injuries or the incident on which to base his opinions; therefore, his testimony was not admissible as lay opinions under N.D.R.Ev. 701. *See Perkins,* 470 F.3d at 156 (opinion of officer who did not observe incident was not lay witness opinion testimony under Rule 701); *Certain Underwriters,* 232 F.3d at 203–04 (investigator's testimony about boat accident was not lay witness opinion testimony because he had specialized knowledge, did not have first-hand knowledge of the accident and his conclusions were not ones a normal person would form). *Cf. State v. Miller,* 530 N.W.2d 652, 656 (N.D.1995) (officer's opinion was based on his perception because officer observed the laceration to defendant's face).

[¶ 14] While the district court said Vigness's testimony would be limited to that of a lay witness, much of Vigness's testimony exceeded that of a lay witness and was based on specialized knowledge or responses to hypothetical questions. Vigness testified that domestic violence is his area of expertise, that he has received several hundred hours of training specific to domestic violence and that he has received training that was specifically related to strangulation crimes. Vigness primarily testified about strangulation crimes in general and not about this particular crime or his investigation of this crime. Vigness was asked what the symptoms of strangulation are, and he said:

"There are a variety of things that a person could experience: Light headedness, difficulty breathing, blacking out, seeing stars, having ringing in their ears. Physical manifestations could be redness, swelling, finger marks, bruising. If a ligature object was used, ligature marks, hoarseness, a change in voice afterwards, the appearance of petechiae, small red dots."

He testified that in most cases there are no visible signs of strangulation, but in a small percentage of cases there are visible signs, however, the signs may not be able to be photographed well. He also testified that in an even smaller percentage of cases physical signs of strangulation are visible and in those cases significant pressure would have to be used to produce those visible marks. Vigness testified strangulation victims sometimes have difficulty articulating exactly what happened and may forget details. Vigness also testified strangulation victims commonly do not realize how serious the crime is and often do not seek medical treatment.

[¶ 15] This testimony was improperly admitted as lay opinion testimony. Vigness's testimony about strangulation was not opinion testimony but rather was presented as specialized knowledge from someone with special training. "Lay opinion testimony is admissible only to

help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir.2001). While a witness's testimony is not necessarily expert testimony simply because the witness has specialized knowledge and was chosen to carry out an investigation because of that knowledge, the witness's testimony is expert testimony if the testimony is rooted exclusively in his expertise or is not a product of his investigation but instead reflects his specialized knowledge. *See United States v. Rigas,* 490 F.3d 208, 224 (2d Cir.2007). Vigness's testimony about strangulation in general was used to provide specialized explanations and was used as a foundation to support his opinions about what may have occurred and to answer hypothetical questions.

▬ [¶ 16] Vigness's testimony in response to hypothetical questions in particular was not admissible as lay opinion testimony under N.D.R.Ev. 701. Vigness was asked, "[I]f Jade Tandeski had indicated to you that she was picked up off the ground by her neck, would that have concerns for you?" Vigness was also asked, "[W]hen a victim indicates to you that they've been strangled and you see a photograph of their neck with a bruise, does that tend to corroborate their statement?" and "When a victim tells you that they've been strangled and then you observe a bruise to their neck, what significance does that have for you regarding her statement to you?" Vigness was also shown a picture of Tandeski's neck, was told that Dvorak testified that he observed bruising in a finger-marked shape on her neck and was then asked about the significance of the injuries and the kind of force required to produce the injuries. Vigness was allowed to give

his opinion in response to these questions. Vigness did not have personal knowledge about whether these situations occurred in this case. Hypothetical questions based on second-hand accounts or based on information learned during the court proceedings are appropriate when an expert witness is testifying under N.D.R.Ev. 702 and 703; however, such opinion testimony does not satisfy N.D.R.Ev. 701 because the witness does not have personal knowledge. *See Certain Underwriters,* 232 F.3d at 203–04.

[¶ 17] While Vigness's opinion testimony in response to hypothetical questions and his other testimony not based on his perceptions or first-hand knowledge of this case may have been admissible under N.D.R.Ev. 702 and 703 if Vigness had been a qualified expert witness, the State did not attempt to qualify him as an expert witness. In fact, the State expressly disavowed offering Vigness as an expert witness. We therefore will not decide whether he qualifies as an expert based on the record. Furthermore, if Vigness's testimony would qualify as expert witness testimony, the State did not disclose prior to trial that it intended to use his testimony as expert witness testimony under N.D.R.Ev. 702 or 703 as N.D.R.Crim.P. 16(a)(1)(F) requires.

▬ [¶ 18] We conclude the district court misapplied the law and abused its discretion by allowing Vigness's opinion testimony because it did not meet the requirements of N.D.R.Ev. 701. In criminal cases, however, "[a]ny error, defect, irregularity or variance that does not affect substantial rights must be disregarded." N.D.R.Crim.P. 52(a). If evidence was admitted in error, this Court will consider the entire record and decide in light of all the evidence whether the error was so prejudicial the defendant's rights were affected and a different decision would have

occurred absent the error. *City of Fargo v. Erickson*, 1999 ND 145, ¶ 13, 598 N.W.2d 787. In non-jury cases, "we presume the court only considered competent evidence" because the "judge . . . is capable of distinguishing between admissible and inadmissible evidence." *In the Interest of B.B.*, 2007 ND 115, ¶ 10, 735 N.W.2d 855. Although Saulter argues there is insufficient evidence to sustain his conviction, he has not shown that absent Vigness's testimony the result of the trial would have been different.

[¶ 19] Some of Vigness's testimony was cumulative. "Erroneously admitted evidence that is cumulative to other properly admitted evidence is not prejudicial, does not affect substantial rights of the parties, and accordingly, is harmless error." *State v. Kelly*, 2001 ND 135, ¶ 26, 631 N.W.2d 167. Vigness testified strangulation is the impediment of blood or airflow to the brain or lungs. This definition of strangulation was used throughout the proceedings and is common knowledge. Vigness also testified about his interview with Tandeski, including that she said her neck was red, swollen, and stiff after the attack. Tandeski and Dvorak both testified about Tandeski's injuries after the incident, and photographs of the injuries were admitted at trial. This testimony was cumulative.

[¶ 20] Furthermore, even without Vigness's testimony, a different result would not have occurred. Tandeski testified Saulter grabbed her throat, lifted her off the ground and threw her into closet doors. Tandeski testified her airway was not completely blocked, but she had a hard time getting air and her throat was very tight. Although some of the details of Tandeski's story have changed over time, her testimony was consistent with statements she made to police after the incident. Most of the inconsistencies in Tandeski's statements were about whether Saulter grabbed her throat with one hand or two hands, and the district court found that fact was not determinative because the evidence indicated she was grabbed around the neck resulting in an impediment of blood flow or airflow to her brain or lungs. Tandeski explained the inconsistencies in her statements and that her prior statements were condensed versions of what occurred.

[¶ 21] Other evidence corroborated Tandeski's testimony. Dvorak testified that after the incident Tandeski told police she had been lifted off the ground by her throat, her throat was swollen, she had pain in her neck and her voice changed or crackled. Dvorak testified that he observed bruising and redness in the shape of a hand or finger on Tandeski's neck after the incident and that it was consistent with her claim she was choked or strangled. Photographs of Tandeski's injuries were admitted during the trial, and Tandeski's ripped shirt also was admitted. Dvorak testified the condition of Tandeski's apartment was consistent with her claims that she was thrown into closet doors when Saulter grabbed her by her neck and lifted her off the ground. Beseke also testified that Tandeski said Saulter lifted her up by her throat possibly causing some asphyxiation and that her injuries and the condition of her apartment corroborated her story. Tandeski's son, who witnessed part of the incident, testified he saw Saulter hitting his mom on the ground in front of his bedroom door, corroborating some of Tandeski's testimony. Sawyer testified that she heard the altercation occurring through her cell phone, including sounds of hitting and yelling. Sawyer also testified she went to Tandeski's house immediately after the incident and observed red marks on Tandeski's

neck. This evidence corroborated Tandeski's testimony.

[¶ 22] We conclude there was overwhelming evidence of Saulter's guilt, and the error in admitting Vigness's testimony was harmless.

### III

[¶ 23] The district court abused its discretion by admitting Vigness's testimony as lay witness opinion testimony under N.D.R.Ev. 701, but this error was harmless. We affirm.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.