2015 ND 255

**James Kelly LENO, Plaintiff and Appellant**

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

No. 20150091.

Supreme Court of North Dakota.

Oct. 19, 2015.

456

Michael R. Hoffman, Bismarck, N.D., for plaintiff and appellant.

Michael T. Pitcher, Office of the Attorney General, Bismarck, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] James Kelly Leno appeals from a judgment affirming a decision of the Department of Transportation to suspend his driving privileges for 91 days. Because we conclude the arresting officer's testimony sufficiently established he performed the required steps listed on the specimen submitter's checklist and Leno received a fair and impartial hearing, we affirm the judgment.

I

[¶ 2] On July 31, 2014, Leno was arrested in Burleigh County for driving under the influence of alcohol after failing field sobriety tests and an onsite alcohol screening test. A blood test revealed Leno had a blood alcohol concentration of 0.145 percent. Leno requested an administrative hearing to contest the Department's intention to suspend his driving privileges.

[¶ 3] At the hearing, the arresting officer testified but did not bring with him the bottom portion of Form 104, the specimen submitter's checklist he completed, which contains directions and a checklist to ensure proper collection and submission of blood samples. The hearing officer admitted into evidence a blank copy of the specimen submitter's checklist, allowed the officer to review it to refresh his memory, and then questioned him about the procedure he used to collect and submit the blood sample for analysis. The hearing officer found the officer followed the required procedures, concluded Leno was tested in accordance with the law, and suspended his driving privileges for 91 days. The district court affirmed the Department's decision.

II

[¶ 4] Leno argues he did not receive a fair and impartial hearing because the hearing officer used a blank copy of the specimen submitter checklist "to lead the arresting officer to give testimony to show compliance" with the required procedures.

[¶ 5] In *Kroschel v. Levi*, 2015 ND 185, ¶ 6, 866 N.W.2d 109, we said:

"We review an administrative revocation of a driver's license under N.D.C.C. § 28-32-46." *Vanlishout v. N.D. Dep't of Transp.*, 2011 ND 138, ¶ 12, 799 N.W.2d 397. We must affirm the Department's order unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46. "When an appeal involves an interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the order is not in accordance with the law." *Johnson v. Dep't of Transp.*, 2004 ND 148, ¶ 5, 683 N.W.2d 886. "Although this Court's review is limited to the record before the administrative agency, 'the district court's analysis is entitled to respect if its reasoning is sound.'" *Deeth v. Dir., N.D. Dep't of Transp.*, 2014 ND 232, ¶ 10, 857 N.W.2d 86 (quoting *Obrigewitch v. Dir., N.D. Dep't of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73). "We review appeals from the final judgment of a district court in the same manner as provided for in N.D.C.C. § 28–32–46 or N.D.C.C. § 28–32–47." *Deeth*, at ¶ 11. "An agency's conclusions on questions of law are subject to full review." *Vanlishout*, 2011 ND 138, ¶ 12, 799 N.W.2d 397.

[¶ 6] During the administrative hearing, exhibit 1d, the completed top portion of Form 104, was admitted in evidence. Exhibit 7, a blank copy of the entire Form 104, was also admitted in evidence without objection. The bottom of Form 104, the specimen submitter's checklist, states:

Used an Intact Kit.

Affixed Completed Specimen Label/Seal Over the Top and Down the Sides of the Blood Tube.

Placed the Blood Tube Inside the Blood Tube Protector and Then Placed it in the Plastic Bag Provided. (*Do Not Remove Liquid Absorbing Sheet.*)

Placed the Plastic Bag and Completed Top Portion of This Form in the Kit Box and Closed It.

Affixed Tamper–Evident Kit Box Shipping Seal on Kit Box.

[¶ 7] The hearing officer questioned the arresting officer about compliance with these requirements:

MS. HUBER: Were you present for that blood draw?

DEPUTY KOMROSKY: Yes, I was.

MS. HUBER: Who opened the kit?

DEPUTY KOMROSKY: I did.

MS. HUBER: Did you inventory the kit?

DEPUTY KOMROSKY: Yes, I did.

MR. HOFFMAN: Object to leading.

MS. HUBER: I'm going to overrule. You had previously testified that you were present during the blood draw?

DEPUTY KOMROSKY: Yes, I was.

MS. HUBER: What happened once the blood was drawn through the tubing and up into the vial? What happened to the vial?

DEPUTY KOMROSKY: The ... I watched the nurse invert it a few times and then she handed it to me to be sealed.

MS. HUBER: So once she handed it to you, what happened to it? What were the steps that you took, or what you did next?

DEPUTY KOMROSKY: I do it a couple of more times and then I place the tube seal that comes with it over the tube.

MS. HUBER: What happened then?

DEPUTY KOMROSKY: I put it in the baggy that comes with it.

MS. HUBER: What happened then?

DEPUTY KOMROSKY: Made sure all the paper work was filled out along with the tube and put it in the original box that it came in and sealed that box.

MS. HUBER: You indicated that there was paperwork as part of this kit?

DEPUTY KOMROSKY: Yes.

MS. HUBER: I would like to show the Deputy the document marked as Exhibit 1d. I'm showing you an exhibit that has been marked as Exhibit 1d. Can you identify Exhibit 1d?

DEPUTY KOMROSKY: It's a copy of the paperwork that was in the blood kit.

MS. HUBER: Do you recognize this exhibit?

DEPUTY KOMROSKY: Yes, I do.

MS. HUBER: What, if any, portion of this do you fill out?

DEPUTY KOMROSKY: I filled out this top portion here. This part.

MS. HUBER: This is the entire form that comes as part of the blood kit?

DEPUTY KOMROSKY: I know there's a bottom portion that you keep for your records, which I also filled out.

MS. HUBER: Where is the bottom portion now?

DEPUTY KOMROSKY: I have it in a folder back in the office, which I didn't bring.

MS. HUBER: Can you explain what the bottom portion is?

DEPUTY KOMROSKY: It's a checklist of all the things you do when you ... once you open the kit.

MS. HUBER: Do you recall the items on that checklist?

DEPUTY KOMROSKY: Yes. It was observed ... it's basically how to ... everything the opener is supposed to do so you make sure everything's there. And reminds you to fill out the paperwork. I guess, I can't think of every single one on there.

MS. HUBER: I'm going to show you what has been marked as Exhibit 1 ... 7, it's already been admitted into evidence. Do you recognize this one?

DEPUTY KOMROSKY: Yes, this would be a completed paperwork that's in the blood kit.

MS. HUBER: This is the form that you see initially before you remove the piece?

DEPUTY KOMROSKY: Yes, this is the bottom portion.

MS. HUBER: This is it?

DEPUTY KOMROSKY: Yeah.

MS. HUBER: Can you look at Exhibit 1 ... 7 for a moment? I know you said you don't ... you can't remember specifically each one of the steps. After looking at Exhibit 7, has your memory been refreshed as to the steps you took?

DEPUTY KOMROSKY: Yes.

MR. HOFFMAN: I'd make a motion to dismiss at this time for the fact that the submitter's checklist has not been sent to the DOT. The DOT does not have jurisdiction to proceed in this matter because that submitter's checklist was not submitted to the DOT, the Director.

MS. HUBER: I'm going to overrule the motion to dismiss.

MR. HOFFMAN: And I'd also object to this method of questioning this officer,

refreshing his memory of the form that doesn't have the proper form in front of him. That's not a refreshing memory that is leaving an improper and prejudicial to this defendant's right to a fair hearing.

MS. HUBER: I'm going to overrule your objections and ask the deputy a series of questions regarding the blood draw.

Deputy, you've already testified that you opened and inventoried the kit, that you sealed the tube when you placed it in the baggie?

DEPUTY KOMROSKY: Yes.

MS. HUBER: Did you ... ?

MR. HOFFMAN: Objection to the leading.

MS. HUBER: I'm going to overrule. Did you ... ?

MR. HOFFMAN: Then I'm going to object to that this denies Mr. Leno a fair hearing.

MS. HUBER: I'm going to overrule the objection. Did you leave the absorbent kit in it?

DEPUTY KOMROSKY: Yes, there's a little white piece of cloth that absorbs any spillage if there was any. That was left in the plastic bag.

MS. HUBER: Then once that was ... the plastic bag that was sealed, what happened to it?

DEPUTY KOMROSKY: That was put into the cardboard box that it comes in. And then the cardboard box is closed then and there's a seal that goes over that, which I sealed.

MS. HUBER: What happened to the box once you sealed it?

DEPUTY KOMROSKY: I kept it with me until I mailed it later on during my shift.

## A

[¶ 8] Leno argues the arresting officer's testimony was insufficient to establish that he scrupulously complied with the requirements listed on the bottom of Form 104, the specimen submitter's checklist.

[¶ 9] When the specimen submitter's checklist is not sent to the Department or presented as evidence at the administrative hearing, "[t]estimony from the participants, including the specimen submitter, can be used to show they scrupulously complied with the methods approved by the state crime laboratory director." *Filkowski v. Dir., N.D. Dep't of Transp.*, 2015 ND 104, ¶ 16, 862 N.W.2d 785. The sufficiency of testimony to establish that an officer performed each of the required steps from the specimen submitter's checklist has been addressed by this Court on numerous occasions. *See, e.g., Filkowski*, at ¶¶ 17–18; *State v. Keller*, 2013 ND 122, ¶¶ 18–20, 833 N.W.2d 486; *Schlosser v. North Dakota Dep't of Transp.*, 2009 ND 173, ¶¶ 11–13, 775 N.W.2d 695; *State v. Jordheim*, 508 N.W.2d 878, 880, 883 (N.D.1993); *McNamara v. Dir., N.D. Dep't of Transp.*, 500 N.W.2d 585, 590 (N.D.1993); *State v. Sivesind*, 439 N.W.2d 530, 533 (N.D.1989). The testimony in these cases ranges from very detailed, as in *Filkowski*, at ¶ 18, which we found sufficient, to perfunctory, as in *Schlosser*, at ¶ 13 (officer simply responded "Yes, I did," when asked if he had completed steps on Form 104), which we found insufficient.

[¶ 10] Here, the officer testified he removed the bottom half of the form at the time of the blood draw and left it in the office. The officer testified he opened and inventoried the kit, and after the nurse turned the blood sample tube over to him he inverted it "a couple of more times and then I place the tube seal that comes with it over the tube." The officer testified he "put it in the baggy that comes with it[,]

... [m]ade sure all the paperwork was filled out along with the tube and put it in the original box that it came in and sealed that box." The officer testified he left in the bag "a little white piece of cloth that absorbs any spillage," sealed it in a cardboard box, and kept the box with him until he mailed it. Although the officer did not use the exact terminology set forth on the bottom of Form 104, we conclude the testimony was sufficient for the hearing officer to reasonably find that the arresting officer scrupulously complied with the requirements in the specimen submitter's checklist.

### B

■ [¶ 11] Relying on *Community Homes of Bismarck, Inc. v. Main*, 2011 ND 27, 794 N.W.2d 204, Leno argues he was denied a fair hearing "by improper refreshing of the memory of a witness." He argues the officer's completed specimen submitter's checklist was the only proper document to use to refresh his memory, not a blank copy of the form.

■ [¶ 12] The North Dakota Rules of Evidence govern the admissibility of evidence at an adjudicative hearing before an administrative agency. *See Dawson v. N.D. Dep't of Transp.*, 2013 ND 62, ¶ 12, 830 N.W.2d 221; N.D.C.C. § 28–32–24(1). In *Main*, 2011 ND 27, ¶ 11, 794 N.W.2d 204, we explained the requirements under N.D.R.Ev. 612 for establishing a proper foundation before witnesses may refer to notes or other materials to refresh their memory:

> First, witnesses must show a need to refresh their memory, and second, witnesses must confirm that the notes will assist them in refreshing their memory. Witnesses may not testify directly from the notes, but can use the notes to assist in their recollection.

(Internal citations omitted). We apply the abuse of discretion standard in reviewing a district court's decision allowing witnesses to refresh their memories, and the decision will not be reversed unless the court acted arbitrarily, unconscionably, or unreasonably, its decision is not the product of a rational mental process leading to a reasoned determination, or when it misinterprets or misapplies the law. *Main*, at ¶ 11.

[¶ 13] In this case, the blank Form 104 was admitted into evidence without objection and the officer testified that he could not "think of every single one [of the requirements] on there." The hearing officer allowed him to look at the requirements on the blank form to refresh his memory. Leno was allowed to cross-examine the officer about the requirements. The officer obviously did not testify directly from the form or the officer would have used the technical terms Leno claims are fatally missing from his testimony. Leno's argument that the officer could only refresh his memory by using the form he completed and left in the office is without merit because Leno does not claim on appeal that the blank form is different than the completed form, and if the officer had taken the completed form to the hearing, it could have been entered in evidence and there would have been no need for the officer to testify about it. We conclude the hearing officer did not abuse her discretion in allowing the officer to refresh his memory.

### C

■ [¶ 14] Leno argues he was denied a fair and impartial hearing because the hearing officer used leading questions to elicit answers from the officer about whether he complied with the requirements listed in the specimen submitter's checklist.

[¶ 15] "A leading question is one that suggests to the witness the answer desired by the examiner." 1 Kenneth S. Broun, *McCormick on Evidence* § 6, at 27 (7th ed.2013) (footnote omitted). Under N.D.R.Ev. 611(c), "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." A court may examine witnesses, *see Interest of T.A.*, 472 N.W.2d 226, 227 (N.D.1991); N.D.R.Ev. 614(b), and we have recognized that leading questions are permissible to refresh a witness's memory. *See Powers v. Martinson*, 313 N.W.2d 720, 729–30 (N.D.1981). Courts have wide discretion in deciding whether leading questions should be permitted on direct examination of a witness. *Id.* at 729.

[¶ 16] Most of the questions the hearing officer asked the officer about the specimen submitter's checklist were not leading questions. "What happened then?" does not suggest an answer to the witness. The leading questions that were asked were necessary to refresh the officer's memory. Although we have held the combination of adjudicative and prosecutorial functions in a hearing officer does not violate a person's right to a fair and impartial administrative hearing, *see Dittus v. N.D. Dep't of Transp.*, 502 N.W.2d 100, 103 (N.D.1993); *Pladson v. Hjelle*, 368 N.W.2d 508, 511 (N.D.1985), we have also recognized "the specter of impropriety arising from" these dual roles. *S & S Landscaping Co. v. N.D. Workers' Comp. Bur.*, 541 N.W.2d 80, 82 (N.D.1995). However, upon our review of the entire record, we conclude Leno has failed to establish that he was denied a fair and impartial hearing.

### III

[¶ 17] The judgment is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, JJ., and THOMAS E. MERRICK, D.J., concur.

[¶ 19] The Honorable THOMAS E. MERRICK, D.J., sitting in place of SANDSTROM, J., disqualified.