McEvers, Justice.
 

 [¶1] Joshua Cook appeals from a criminal judgment after a jury found him guilty of possession of methamphetamine with intent to deliver, possession of heroin, possession of methadone, possession of drug paraphernalia, and possession of marijuana. We conclude the district court did not abuse its discretion by admitting evidence after proper foundation was laid, the court did not abuse its discretion by not granting a departure from the mandatory minimum sentence, and the court did not err in considering Cook's prior convictions when sentencing. Therefore, we affirm the criminal judgment.
 

 I
 

 [¶2] On August 22, 2016, officers arrived at a hotel in Fargo to investigate possible drug trafficking. Cook exited the room and officers detained him. During a pat down of Cook, officers found and removed a small blue bag in Cook's front pants pocket. Inside the room, another individual was detained. An officer placed the small blue bag on top of a counter inside the hotel room. Officers conducted a cursory search of the room and did not observe any drugs in plain view. Officers then waited for the canine unit to arrive and everyone exited the room leaving the blue bag on the counter.
 

 *182
 
 [¶3] Another officer arrived with his canine and began a sniff of the hotel room. The canine alerted to an odor on the counter, grabbed the blue bag, thrashed it around, dropped it, and sniffed it. The canine gave his final response, indicating the odor of a controlled substance was present. After the canine and the officer finished the search, additional baggies were in plain view that were not present before they entered the room. One of the baggies was located a few inches from where the blue bag was originally placed, the other was on the floor at the base of the counter. The officer then informed the officers who were waiting outside the hotel room the locations where the canine alerted to the odor of a controlled substance.
 

 [¶4] After the canine left, the officers who were waiting outside the hotel room began their search of the room. The contents of the blue bag were emptied, inventoried, and photographed, along with the two baggies that were found on the floor and counter. In the room the officers found: (1) two zip sealed baggies with little green dollar signs containing methamphetamine weighing approximately one sixteenth of an ounce; (2) three baggies containing methamphetamine with a combined weight of an eighth of an ounce; (3) two baggies containing heroin; (4) a scale with methamphetamine residue; and (5) a glass container with marijuana in it. The officers also found a key ring in Cook's pocket which contained a white methadone pill.
 

 [¶5] Officers also searched the vehicle Cook had been driving and found a backpack located on the front seat containing indicia of Cook. Officers found hundreds of zip seal baggies of varying sizes and a small red/pink zip seal baggie containing methamphetamine inside the backpack. One of the baggies in the backpack had the same green dollar signs as a baggie located in the hotel room. Officers located 60 baggies matching the blue and black baggies containing heroin found inside the small blue bag. A white grocery bag located in the vehicle's backseat contained sandwich bags and a large number of zip seal baggies in multiple sizes, designs, and colors. Again, there were zip seal baggies matching the blue and black zip seal baggies containing heroin and baggies with the same green dollar signs on them.
 

 [¶6] The State charged Cook with possession of methamphetamine with intent to deliver, possession of heroin, possession of methadone, possession of morphine, possession of drug paraphernalia, and possession of marijuana. The State later dismissed the possession of morphine charge.
 

 [¶7] During trial, the State attempted to have various items of evidence admitted. Cook objected, arguing a lack of foundation and improper chain of custody. The district court, after discussions with the parties "conditionally" received the evidence, indicating the evidence could be admitted fully once additional chain of custody and foundation testimony was elicited. The State called additional witnesses and moved the court to admit the evidence without conditions, which the court granted.
 

 [¶8] On April 19, 2017, a jury found Cook guilty of possession of methamphetamine with intent to deliver, possession of heroin, possession of methadone, possession of drug paraphernalia, and possession of marijuana. After the jury verdict, the legislature passed H.B. 1041, § 12, which amended and reenacted N.D.C.C. § 19-03.1-23(5), limiting which prior convictions may be used to trigger mandatory minimum sentences for subsequent offenses.
 

 [¶9] In June 2017, the district court held a sentencing hearing. The State argued for a twenty-year mandatory minimum sentence to be imposed. Without specifically identifying the bill number, Cook argued
 
 *183
 
 the legislative amendments should be applied that would reduce the mandatory minimum sentence for second or subsequent offenses. Cook argued if the court sentenced under the "old law," it should deviate from the mandatory minimum sentence. Cook argued one of the prior convictions alleged in the information could not be used to enhance his sentence, based on the passage of H.B. 1041. He also argued the court should not consider a prior class A felony conviction for delivery of methamphetamine from 2011, because the State had not included information on that conviction during discovery.
 

 [¶10] The district court admitted evidence of the 2011 conviction. The court reviewed the pre-sentence investigation report and after hearing the arguments of the parties, the court determined H.B. 1041 did not apply to the case because it did not include language indicating it should be applied retroactively. The court sentenced Cook to the mandatory minimum sentence of twenty years on the possession of methamphetamine with intent to deliver.
 

 [¶11] Cook appeals from the criminal judgment entered after a jury found him guilty of five charges. Cook argues the district court abused its discretion by admitting evidence that lacked foundation and by not granting a departure from the mandatory minimum sentence. Cook further argues the court erred in concluding H.B. 1041 was not applicable to his case and the court erred in considering his prior convictions when the amended information included a prior conviction which no longer qualified as a conviction the State could use to enhance a mandatory minimum sentence.
 

 II
 

 [¶12] Cook argues the district court abused its discretion by admitting physical evidence and a report into evidence without proper foundation because there was a break in the chain of custody. Cook further argues the court abused its discretion by "conditionally" admitting evidence before foundation had been established.
 

 [T]his [C]ourt has held that a proper chain of custody is a foundational requirement to account for the whereabouts of physical evidence up until the time it is admitted at trial to ensure that the physical evidence is in substantially the same condition at the time it is admitted into evidence. An unbroken chain of custody is not necessarily a condition for the admissibility of evidence. If the [district] court is reasonably satisfied that the item offered is what it is purported to be and that the condition of the item is substantially unchanged, it is properly admissible into evidence. Any defect in the chain of custody goes to the weight of the evidence rather than the admissibility of the evidence. The admission or exclusion of physical evidence is within the sound discretion of the [district] court, and the [district] court's decision thereon will not be disturbed on appeal absent an abuse of discretion.
 

 State v. Haugen
 
 ,
 
 448 N.W.2d 191
 
 , 196 (N.D. 1989) (citations omitted). An abuse of discretion occurs when a court acts arbitrarily, unreasonably, or capriciously, or if it misinterprets or misapplies the law.
 
 State v. Belgarde
 
 ,
 
 2017 ND 70
 
 , ¶ 4,
 
 891 N.W.2d 766
 
 .
 

 [¶13] Here, the district court "conditionally" admitted baggies and a full lab report into evidence. The court indicated the State needed to lay more foundation as to the evidence before it could be fully admitted. Cook argues the jury was tainted by the court conditionally admitting
 
 *184
 
 evidence prior to the State laying a full foundation.
 

 [¶14] This Court has not previously discussed the practice of conditionally admitting evidence. Cook has cited no authority to support his argument that conditionally admitting evidence is an abuse of discretion. Rule 901, N.D.R.Ev., provides for methods of authentication of evidence. The purpose of authentication is to establish relevancy.
 
 R & D Amusement Corp. v. Christianson
 
 ,
 
 392 N.W.2d 385
 
 , 386 (N.D. 1986). "Authentication is merely a preliminary question of conditional relevancy and, as such, is to be determined according to the standards and requirements of N.D.R.Ev. 104(b)." Explanatory Note to N.D.R.Ev. 901. Under N.D.R.Ev. 104(a), the district court must decide whether evidence is admissible. Conditional admission is contemplated under N.D.R.Ev. 104(b), when the relevance of evidence depends on whether a fact exists. Courts in other jurisdictions have held evidence may be conditionally admitted subject to providing proof connecting the facts by the close of the case.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 U.S. v. Ortiz-Rengifo
 
 ,
 
 832 F.2d 722
 
 , 725 (2d Cir. 1987) ;
 
 U.S. v. Onyenso
 
 ,
 
 615 Fed.Appx. 734
 
 , 737 (3d Cir. 2015) (relying on
 
 U.S. v. Ammar
 
 ,
 
 714 F.2d 238
 
 , 246-47 (3d Cir. 1983) );
 
 U.S. v. Peoples
 
 ,
 
 250 F.3d 630
 
 , 638 (8th Cir. 2001). If evidence is conditionally admitted and the party offering the evidence does not later provide the necessary showing, the court may strike the evidence from the record.
 
 Ortiz-Rengifo
 
 ,
 
 832 F.2d at 725
 
 .
 

 [¶15] Cook argues that because the case agent turned the evidence over to another officer, who then took the evidence to the North Dakota State Laboratory in Bismarck, and the other officer did not testify, there was a break in the chain of custody and the foundation was not properly laid. The State elicited testimony from a state lab technician, the evidence custodian, the canine handler, and the case agent. During the testimony of the case agent, the State asked additional questions to lay foundation and moved to enter the exhibits fully. Cook objected, but ultimately the district court admitted each exhibit without conditions.
 

 [¶16] This Court has stated not everyone whose testimony may be relevant in establishing the chain of custody must appear in person as part of the State's case.
 
 See
 

 State ex rel. Madden v. Rustad
 
 ,
 
 2012 ND 242
 
 , ¶ 11,
 
 823 N.W.2d 767
 
 . This Court has also stated that not everyone who laid hands on the evidence must be called.
 

 Id.
 

 "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." N.D.R.Ev. 901(a).
 

 [¶17] Although the State called its witnesses out of chronological order, the State still laid proper foundation before the district court admitted the evidence unconditionally. The court did not abuse its discretion by conditionally admitting evidence and eventually admitting it without condition. The court was satisfied that the items offered into evidence were what the State purported them to be and there was testimony indicating they were in the same condition as they were found. Therefore, the exhibits were properly admitted into evidence despite the break in the chain of custody and the court did not abuse its discretion.
 

 III
 

 A
 

 [¶18] Cook argues the district court erred in concluding H.B. 1041 was not applicable to his case. House Bill 1041, § 12, amended N.D.C.C. § 19-03.1-23(5) with regard to which prior convictions may
 
 *185
 
 be used to enhance sentencing for subsequent offenses. House Bill 1041, § 23, declared Section 12 an emergency measure. "An emergency measure takes effect upon its filing with the secretary of state or on a date specified in the measure." N.D. Const. art. IV, § 13. House Bill 1041 was approved and filed on April 21, 2017.
 

 [¶19] The emergency measure amended N.D.C.C. § 19-03.1-23(5) by limiting what type of convictions may be used to enhance mandatory minimum terms of imprisonment for a subsequent offense. Prior to the emergency measure, N.D.C.C. § 19-03.1-23(5) stated, "A violation of this chapter or a law of another state or the federal government which is equivalent to an offense under this chapter ... must be considered a prior offense under subsections 1, 3, and 4." With the emergency measure in place, the statute now states, "[A] violation of this title or a law of another state or the federal government which is equivalent to an offense with respect to the manufacture, delivery, or intent to deliver a controlled substance under this title ... must be considered a prior offense under subsections 1, 4, and 5." N.D.C.C. § 19-03.1-23(6) (previously subsection (5) ), effective April 21, 2017. Essentially, this emergency measure limits the type of prior convictions available to enhance mandatory imprisonment sentences for subsequent offenses, including making simple possession convictions no longer eligible. The emergency measure did not indicate it should be applied retroactively.
 

 [¶20] The issue before us is when is the amendment effective. The question presented is one of statutory construction and legislative intent. Statutory interpretation is a question of law, which is fully reviewable on appeal.
 
 State v. Flatt
 
 ,
 
 2007 ND 98
 
 , ¶ 8,
 
 733 N.W.2d 608
 
 . "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1-02-02. "No part of this code is retroactive unless it is expressly declared to be so." N.D.C.C. § 1-02-10. "We have said retroactive application is disfavored because it creates new legal responsibilities based on past conduct."
 
 Flatt
 
 , at ¶ 9.
 

 [¶21] Here, a jury found Cook guilty on April 19, 2017. Not considered by the jury, the State alleged two prior convictions in the amended information, including a possession conviction. It was not until after a jury returned verdicts of guilty that the emergency measure became effective. However, because the jury did not consider the issue of prior convictions, the verdicts are not affected. "A prior conviction that enhances a sentence, but not the seriousness of the offense, is generally not regarded as an element of the offense."
 
 State v. Tutt
 
 ,
 
 2007 ND 77
 
 , ¶ 8,
 
 732 N.W.2d 382
 
 (quoting
 
 City of Fargo v. Cossette
 
 ,
 
 512 N.W.2d 459
 
 , 462 (N.D. 1994) ). The United States Supreme Court has rejected the argument that a prior conviction must be found by a jury.
 
 Id.
 
 at ¶ 7. See
 
 Almendarez-Torres v. U.S.
 
 ,
 
 523 U.S. 224
 
 , 239-47,
 
 118 S.Ct. 1219
 
 ,
 
 140 L.Ed.2d 350
 
 (1998). Therefore, the prior convictions did not need to be proved beyond a reasonable doubt to the jury.
 

 [¶22] Cook argues we need not resort to look to the rule of statutory construction found in N.D.C.C. § 1-02-10, if we are able to rationally infer the legislative intent from other sources, relying on this Court's decision in
 
 State v. Cummings
 
 ,
 
 386 N.W.2d 468
 
 (N.D. 1986). In
 
 Cummings
 
 , the defendant committed an offense after the passage of an amendment but prior to its effective date, and pled guilty and was sentenced after the amendment had taken effect.
 

 Id.
 

 at 470
 
 . In
 
 Cummings
 
 , this Court reaffirmed "the general rule that statutes
 
 *186
 
 are not retroactive unless expressly declared so by the Legislature, we also hold that an exception should be made to this general rule in the case of ameliorating penal legislation."
 

 Id.
 

 at 472
 
 . This Court reasoned:
 

 There is a compelling inference that the 1985 Legislature, by reducing the mandatory minimum penalty for violation of NDCC § 39-06-42 from fifteen days' imprisonment to four consecutive days' incarceration, determined that the former penalty was too harsh and that the latter and lighter punishment was the appropriate penalty for violations of that statute.
 

 That the Legislature had such an intent seems obvious; nothing is gained by imposing a more severe punishment after the Legislature has determined that a lighter penalty is appropriate. The excess in punishment can serve no other purpose than to satisfy a desire for vengeance, a legislative motivation we will not presume.
 

 Id.
 

 (citations omitted).
 

 [¶23] Moreover, a statute cannot apply retroactively when it becomes effective after a person has been finally convicted.
 
 State v. Iverson
 
 ,
 
 2006 ND 193
 
 , ¶ 7,
 
 721 N.W.2d 396
 
 . "Legislation lessening punishment may not be applied to final convictions because this would constitute an invalid exercise by the Legislature of the executive pardoning power."
 

 Id.
 

 (citing
 
 Ex parte Chambers
 
 ,
 
 69 N.D. 309
 
 , 315,
 
 285 N.W. 862
 
 , 864-65 (1939) ). The United States Supreme Court has stated that a final conviction means a judgment of conviction has been rendered and the availability of appeal has been exhausted.
 

 Id.
 

 In
 
 Iverson
 
 , the defendant was convicted and sentenced in 1969.
 
 Id.
 
 at ¶ 8. This Court affirmed on direct appeal in 1971, before the statute's effective date in July 1975.
 
 Id.
 
 This Court concluded since the defendant was finally convicted before the statute's effective date, the requested relief would constitute an infringement on the executive pardoning power.
 
 Id.
 

 [¶24] When analyzing
 
 Cummings
 
 and
 
 Iverson
 
 together, statutes are not retroactive unless expressly declared so by the legislature, noting an exception for ameliorating penal legislation. Furthermore, a statute cannot apply retroactively when it becomes effective after a person has been finally convicted otherwise it would constitute an invalid exercise by the legislature of the executive pardoning power. We conclude H.B. 1041 is ameliorating, fitting the narrow exception pointed out in
 
 Cummings
 
 . We also conclude Cook had not been finally convicted because his right to appeal had not been exhausted before the statute's effective date, avoiding the invalid exercise by the legislature of any pardoning power. Therefore, H.B. 1041 was applicable to Cook at the time of sentencing. We conclude the district court erred in finding H.B. 1041 did not apply at the time of sentencing.
 

 [¶25] "We will not set aside a district court's decision simply because the court applied an incorrect reason, if the result is the same under the correct law and reasoning."
 
 Myers v. State
 
 ,
 
 2017 ND 66
 
 , ¶ 10,
 
 891 N.W.2d 724
 
 . As explained below, the court reached the right result, but for the wrong reason.
 

 B
 

 [¶26] Cook argues the district court erred in using a prior conviction for enhancement when the amended information did not contain the specific prior conviction. "The prior offense must be alleged in the complaint, information, or indictment." N.D.C.C. § 19-03.1-23(6).
 

 [¶27] The State alleged two prior convictions which qualified, under the law at the
 
 *187
 
 time, for enhancement of the mandatory minimum sentence Cook was facing. However, after the trial but before the sentencing hearing, H.B. 1041's emergency measure changing the qualifying prior convictions became effective. At the sentencing hearing, the State acknowledged one of the prior convictions alleged in the information could no longer be used to enhance the mandatory minimum imprisonment terms. The State informed the district court that Cook had two prior convictions on his record that qualified him for enhancement even with the new restrictions imposed by H.B. 1041 and offered the judgments from three prior convictions to the court, two which were alleged in the information and a third that showed an additional intent to deliver conviction.
 

 [¶28] Cook argues the district court should not have considered the third judgment because he was not aware of the conviction. However, upon review of the record, the State provided notice in a discovery disclosure on September 1, 2016, that Cook was convicted in case number 09-2010-CR-04374 of manufacture, deliver or possess with intent to deliver and in case number 09-2012-CR-03273 of possession of a controlled substance with intent to deliver. Both convictions arose out of Cass County and could be easily reviewed by Cook. Therefore, Cook was put on notice of both convictions prior to trial and prior to sentencing.
 

 [¶29] In
 
 State v. Mora
 
 ,
 
 2000 ND 179
 
 ,
 
 617 N.W.2d 478
 
 , this Court faced a similar issue. The defendant was aware the State intended to use prior convictions for an enhancement of the mandatory minimum sentence term.
 
 Id.
 
 at ¶ 9. The defendant argued on appeal that the information must specifically identify two prior convictions the State was relying on in order to satisfy the requirement in N.D.C.C. § 19-03.1-23(5) (now subsection (6) ).
 
 Mora
 
 , at ¶ 8. The State argued the general reference to the statute and the mandatory minimum sentence in the information's penalty section was sufficient to put the defendant on notice that the State was relying on prior convictions.
 
 Id.
 
 This Court held "[i]f the record did not reflect actual knowledge on [the defendant's] part, we would reverse because of the inadequacy of the allegations of the information."
 
 Id.
 
 at ¶ 14. However, this Court concluded the record indicated the defendant was aware of the State's intention to use prior convictions to seek the mandatory minimum sentence.
 
 Id.
 
 This Court relied on N.D.R.Crim.P. 52, stating that an error or variance that did not affect the substantial rights of the defendant shall be disregarded.
 
 Mora
 
 , at ¶ 15. This Court affirmed the conviction.
 
 Id.
 
 at ¶ 17.
 

 [¶30] Here, the amended information alleged two prior convictions which at the time of trial qualified to trigger a mandatory minimum sentence. At the time of sentencing, one of the prior convictions alleged in the amended information could no longer be used to enhance the mandatory minimum sentence. Cook was fully aware that the State intended to use two prior convictions to seek the mandatory minimum sentence for subsequent offenses, but he argued he was not aware of the 2011 conviction. The record reflects the State disclosed both qualifying convictions to Cook. At sentencing the State informed the district court of Cook's prior criminal convictions, Cook's pre-sentence investigation report, and moved to enter copies of three judgments. The court admitted the judgments of the prior convictions, including two intent to deliver convictions fulfilling the requirements to enhance the sentence, regardless of the court's conclusion H.B. 1041 did not apply. The court did not err by admitting the two qualifying convictions in sentencing Cook.
 

 *188
 
 C
 

 [¶31] Cook alleges the district court erred by not considering the mandatory minimum sentence was reduced in H.B. 1041. However, Cook is referring to the amendment included in H.B. 1269, § 6, which amended N.D.C.C. § 19-03.1-23(1)(a)(2), by reducing the mandatory minimum term of imprisonment for a third or subsequent offense. House Bill 1269 did not have an emergency measure, making it effective August 1, 2017.
 
 See
 
 N.D. Const. art. IV, § 13. Cook was sentenced in June 2017, prior to the effective date of the statutory amendment. The court did not err by applying the mandatory minimum sentence in effect at the time of the sentencing hearing.
 

 D
 

 [¶32] Cook argues the district court erred by not deviating from the mandatory minimum sentence, because it is a manifest injustice to impose such a harsh sentence. This Court's review of a criminal sentence is limited.
 
 See
 

 State v. Murphy
 
 ,
 
 2014 ND 202
 
 , ¶ 15,
 
 855 N.W.2d 647
 
 . The court is allowed the widest range of discretion in regard to sentencing.
 

 Id.
 

 This Court's review is limited to whether the court acted within the sentencing limits prescribed by statute, or substantially relied upon an impermissible factor.
 

 Id.
 

 [W]hen sentencing an individual convicted of a violation in chapter 19-03.1 for which there is a mandatory minimum sentence, the court may depart from the applicable mandatory minimum sentence if the court, in giving due regard to the nature of the crime, history and character of the defendant, and the defendant's chances of successful rehabilitation, finds a compelling reason on the record that imposition of the mandatory minimum sentence would result in manifest injustice to the defendant and that the mandatory minimum sentence is not necessary for the protection of the public.
 

 N.D.C.C. § 12.1-32-02.3(1).
 

 [¶33] The district court stated at sentencing:
 

 [Cook] is correct in regard to the statutory language concerning departures from the mandatory sentence; however, I don't feel there are any compelling reasons to find manifest injustice in this case. This appears to be similar to all other-not all other, but the vast majority of these types of cases seen by the [c]ourt. So I don't see anything unusual in this case that would warrant departure from the mandatory minimum.
 

 Accordingly, the [c]ourt will impose the mandatory minimum in what the [c]ourt will call the law existing at the time of the offense and charge. [Cook] refers to that as the old law.
 

 [¶34] Here, the district court sentenced Cook within the sentencing limits prescribed by N.D.C.C. § 19-03.1-23(1)(a) as it read at the time of the sentencing hearing. The court considered Cook's reasons to find manifest injustice but stated his reasons were not compelling. Therefore, the court did not abuse its discretion.
 

 IV
 

 [¶35] We affirm the criminal judgment.
 

 [¶36] Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jon J. Jensen
 

 Benny A. Graff, S.J.
 

 Gerald W. VandeWalle, C.J.
 

 [¶37] The Honorable Benny A. Graff, S.J., sitting in place of Tufte, J., disqualified.