# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 28

State of North Dakota,                                                    Plaintiff and Appellee

v.

Michael Eric Foster,                                                    Defendant and Appellant

No. 20180098

Appeal from the District Court of Pembina County, Northeast Judicial District, the Honorable Laurie A. Fontaine, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Jonathan R. Byers (argued), Assistant Attorney General, Bismarck, N.D., and Rebecca L. Flanders (appeared), Pembina County State's Attorney, Cavalier, N.D., for plaintiff and appellee.

Michael R. Hoffman, Bismarck, N.D., for defendant and appellant.

**State v. Foster**

**No. 20180098**

**Tufte, Justice.**

[¶1]   Michael Eric Foster appeals from a criminal judgment finding him guilty of one count of conspiracy to commit criminal mischief, one count of criminal mischief, and one count of criminal trespass. On appeal, Foster argues that the district court erred in admitting or excluding certain evidence and that there was insufficient evidence to support the criminal mischief and conspiracy convictions. We affirm the district court.

I

[¶2]   On October 11, 2016, Foster and a co-defendant went to a Keystone pipeline valve site located in Pembina County. Foster used bolt-cutters to cut the padlock on the gate as well as the padlock and chain on the valve itself. After a call was made to warn TransCanada Pipelines Limited ("TransCanada") that someone was about to close a manual valve on the Keystone pipeline, Foster closed the valve, halting the flow of oil. TransCanada performed an emergency shutdown of the pipeline, which then remained closed for over 7 hours. The State charged Foster with criminal mischief, conspiracy to commit criminal mischief, criminal trespass, and several other charges not at issue here. During the jury trial, the State called Trevor Pollock, a manager in TransCanada's pipeline operation control center. Foster argues that the State failed to provide sufficient evidence to prove he intentionally caused a financial loss greater than $10,000 and intentionally agreed to do so with another individual and that the district court abused its discretion in admitting and excluding several items of evidence.

II

[¶3]   Foster argues that Pollock's testimony included inadmissible hearsay. He further argues this hearsay testimony was the only evidence the State produced to prove a financial loss greater than $10,000. Thus he argues the evidence was

1

insufficient. A "district court exercises broad discretion in determining whether to admit or exclude evidence, and its determination will be reversed on appeal only for an abuse of discretion." *State v. Doppler*, 2013 ND 54, ¶ 7, 828 N.W.2d 502 (quoting *State v. Chisholm*, 2012 ND 147, ¶ 10, 818 N.W.2d 707). "A district court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably, or it misinterprets or misapplies the law." Id. Thus, we apply the abuse of discretion standard when "reviewing a district court's evidentiary rulings under the hearsay rule." *State v. Azure*, 2017 ND 195, ¶ 6, 899 N.W.2d 294 (quoting *State v. Vandermeer*, 2014 ND 46, ¶ 6, 843 N.W.2d 686).

[¶4]   First, Foster argues Pollock testified to opinion testimony based on hearsay. A lay witness is permitted to testify if competent and "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." N.D.R.Ev. 601, 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." N.D.R.Ev. 602. Testimony that falls within the personal knowledge of the lay witness is different from opinion testimony, which is governed by N.D.R.Ev. 701. Here, Pollock testified as a lay witness to facts within his personal knowledge, not opinions. Under the North Dakota Rules of Evidence, lay witnesses may testify to observations or facts within their personal knowledge. Such testimony does not constitute opinion testimony. *See State v. Louser*, 2017 ND 10, ¶ 9, 890 N.W.2d 1 (discussing types of witness testimony and stating lay witnesses may testify to their direct observation or their opinion).

[¶5]   Pollock's testimony was not expert testimony because it was not "based on scientific, technical, or other specialized knowledge." *State v. Crissler*, 2017 ND 249, ¶ 7, 902 N.W.2d 925 (citing *State v. Evans*, 2013 ND 195, ¶ 17, 838 N.W.2d 605). A witness is qualified as an expert "if the testimony is rooted exclusively in his expertise or is not a production of his investigation but instead reflects his specialized knowledge." *Louser*, 2017 ND 10, ¶ 9, 890 N.W.2d 1 (quoting *State v. Saulter*, 2009 ND 78, ¶ 15, 764 N.W.2d 430) (emphasis removed). However, testimony "relating

to purely physical facts requires no special qualification and does not come within the scope of expert opinion evidence." *State v. Engel*, 289 N.W.2d 204, 208 (N.D. 1980).

[¶6] Pollock testified about his observations and activities as operations coordinator in the pipeline operation control center on the day Foster closed the pipeline valve. Pollock testified to the jury about his duties in the control center, including monitoring pressure at various points in the system, monitoring and controlling pumps and automated valves, reviewing electronic logs of system operation, participating in operations meetings, responding to problems or issues, reviewing incidents, and, in general, operating the pipeline to achieve a target flow volume. Pollock testified he is one of the record custodians for information kept about pipeline operations. Pollock explained the records are automatically generated and stored in a database, and he reviews the records during unplanned changes such as the unplanned outage at issue here. Pollock knew shippers' requests to transport oil exceeded pipeline capacity because he operated the pipeline consistent with his orders to operate at maximum capacity continuously. He testified "[w]e are 24 hour 7 days a week, we're scheduled to ship higher than we've got capacity for, so if there's any downtime there isn't sprint capacity to catch up. . . . [I]f we are down we don't have the availability to make up that time."

[¶7] The day of the incident, Pollock was on duty and responsible for operations. Pollock testified the target amount of oil that the pipeline transports is 591,000 barrels per day based on 365 days a year, taking into account shippers' requests, scheduled maintenance, and unscheduled shutdowns. Pollock testified the actual flow rate on October 11, before the valve was closed, was 634,000 barrels per day. He relied on State's Exhibit 21, a computer-generated log of flow rate from the company's database that contains regularly kept records of TransCanada's information since 2010, which was admitted into evidence. Here, because Pollock was responsible for monitoring and setting flow rates as manager, the district court did not abuse its discretion in permitting him to testify to his personal knowledge about the flow rates,

3

transport capacity, duration of the outage, and the volume of oil which TransCanada lost the opportunity to transport.

[¶8] To establish a financial loss greater than $10,000, the State relied on Pollock's testimony in which he multiplied barrel flow per minute times the number of minutes the line was shut down times the shipping cost per barrel. Pollock testified to the shipping cost per barrel based on information he received from another TransCanada department. Pollock did not testify from personal knowledge of the amounts TransCanada billed or received for shipping oil. He received this information from someone else and relied on the information as true to establish his loss calculation. At trial, Foster objected to this testimony as hearsay. The district court overruled the objection, reasoning that the information was obtained from business records and thus was admissible under N.D.R.Ev. 803(6). The State did not offer the records as exhibits or provide any copies to Foster before or at trial. Additionally, Pollock is not the custodian of these financial records. Foster raises a serious question as to whether Pollock's testimony regarding the shipping cost per barrel was inadmissible hearsay, but we do not decide this question because even if that testimony should not have been admitted, any error is harmless because other evidence fully supports an inference of loss greater than $10,000. *State v. Patterson*, 2014 ND 193, ¶ 7, 855 N.W.2d 113 ("Reversal of a conviction is warranted only if the admitted testimony is so prejudicial that substantial injury occurred and absent the error a different decision would have resulted.") (citation omitted).

[¶9] A harmless error is "[a]ny error, defect, irregularity or variance that does not affect substantial rights [and it] must be disregarded." N.D.R.Crim.P. 52(a). "Stated simply, harmless error is error that is not prejudicial." *Hamilton v. State*, 2017 ND 54, ¶ 8, 890 N.W.2d 810 (quoting *State v. Acker*, 2015 ND 278, ¶ 12, 871 N.W.2d 603). If evidence is admitted in error, "this Court will consider the entire record and decide in light of all the evidence whether the error was so prejudicial the defendant's rights were affected and a different decision would have occurred absent the error." *Azure*, 2017 ND 195, ¶ 22, 899 N.W.2d 294 (quoting *State v. Doppler*, 2013 ND 54, ¶ 21,

4

828 N.W.2d 502). Cumulative evidence to properly admitted evidence does not "affect substantial rights of the parties, and accordingly, is harmless error." *Azure*, at ¶ 22 (quoting *State v. Leinen*, 1999 ND 138, ¶ 17, 598 N.W.2d 102).

[¶10] The standard of review for evidentiary questions is deferential and limited. *State v. Vetter*, 2013 ND 4, ¶ 17, 826 N.W.2d 334 (citing *State v. Bauer*, 2010 ND 109, ¶ 7, 783 N.W.2d 21).

> In reviewing the sufficiency of the evidence to convict, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor.

*Crissler*, 2017 ND 249, ¶ 10, 902 N.W.2d 925 (quoting *State v. Rourke*, 2017 ND 102, ¶ 6, 893 N.W.2d 176). Further, this Court does not reweigh evidence or judge the credibility of witnesses. *State v. Hannah*, 2016 ND 11, ¶ 7, 873 N.W.2d 668 (quoting *State v. Rufus*, 2015 ND 212, ¶ 6, 868 N.W.2d 534). Neither will this Court "disturb the verdict and judgment even though the trial included conflicting evidence and testimony." *Azure*, 2017 ND 195, ¶ 25, 899 N.W.2d 294 (quoting *State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204).

[¶11] "A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Crissler*, 2017 ND 249, ¶ 10, 902 N.W.2d 925 (quoting *Rourke*, 2017 ND 102, ¶ 6, 893 N.W.2d 176). "[C]ircumstantial evidence is often the only way to prove criminal intent." *State v. Sabo*, 2007 ND 193, ¶ 20, 742 N.W.2d 812 (citing *State v. Stensaker*, 2007 ND 6, ¶ 21, 725 N.W.2d 883). A "jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict." *Crissler*, at ¶ 10. "[J]uries may draw rational inferences based upon common knowledge in reaching a verdict." *Hannah*, 2016 ND 11, ¶ 9, 873 N.W.2d 668 (citing *State v. Bitz,* 2008 ND 202, ¶ 10, 757 N.W.2d 565).

However, a "jury is not justified in convicting a defendant on the basis of mere suspicion, speculation, conjecture, passion, prejudice, or sympathy." *Hannah*, at ¶ 11 (quoting *State v. Miller*, 357 N.W.2d 225, 227 (N.D. 1984)). Therefore, this Court's role in reviewing a jury verdict for sufficiency of the evidence is to "merely review the record to determine if the record reflects competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction beyond a reasonable doubt." *State v. Miller*, 357 N.W.2d 225, 226 (N.D. 1984) (citing *State v. Lawenstein*, 346 N.W.2d 292, 293 (N.D. 1984)). Foster, however, must show "the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *Azure*, 2017 ND 195, ¶ 25, 899 N.W.2d 294 (quoting *State v. Gonzalez*, 2000 ND 32, ¶ 14, 606 N.W.2d 873). Here, the jury had ample evidence from which it could infer the damages to TransCanada, both intended and actual, were greater than $10,000.

[¶12] The State did not have to prove a specific dollar amount, only that the amount was greater than $10,000.[1] In addition to Pollock's testimony, the evidence included twenty-two videos and a notebook. The jury considered video of Foster stating: "I'm in North Dakota, and I'm going to prison. I know that," and "If you have ever done anything like this, it feels so great. . . . It's hard to describe. . . . I'm trying to think when I've felt like this—a few magical dates in my life. . . . This feels so good—to be doing something big, to be doing something foolish, to be doing something impossible—about the most important thing humans have ever faced." There was also a video with Foster and his co-defendant discussing how to "choreograph the activity so it will make the greatest impression on the live-stream video." These videos showed the jury Foster's recognition of the magnitude of his actions. Foster's intent to do "something big" combined with acts he carried out to cause that effect support

---

[1]It should be noted that the State unnecessarily increased its burden in proving intent by charging Foster with "intentionally causing a financial loss greater than $10,000," thus requiring intent as to the amount of damage instead of only to the act of criminal mischief causing the damage, as required by N.D.C.C. § 12.1-21-05(2)(a).

an inference that he achieved his intended result. Additionally, the evidence showed his actions were part of a coordinated effort through Climate Direct Action, which released a video showing Foster turning off the valve and touting the incident as the "biggest coordinated move on U.S. energy infrastructure ever undertaken by environmental protesters."

[¶13] Further, the jury was instructed on "Matters of Common Knowledge and Science," in which the jurors were informed that "you may apply to the facts and circumstances matters of common knowledge, and draw reasonable inferences from them, as if they were fully proved by direct evidence." The jury could infer from this evidence that Foster intended to create a large effect, greater than $10,000, against TransCanada. A rational fact-finder reasonably could infer on the basis of common sense and the testimony presented that the cost to ship 200,000 barrels of oil from Alberta, Canada, to Cushing, Oklahoma, is greater than $10,000. If a disruption of several hours did not cause more than $10,000 in losses, the jury could infer it would not be the "big," "foolish," and "impossible" action Foster intended against a multi-billion dollar, publicly traded, international pipeline company. Thus, even if Pollock's testimony regarding the shipping price per barrel was inadmissible hearsay, its presentation to the jury was harmless error in view of the other evidence supporting the verdict on that element.

III

[¶14] Foster argues the State presented insufficient evidence of his intent to cause a financial loss greater than $10,000. As discussed above, there is ample evidence in addition to Pollock's testimony about shipping costs from which a jury could infer an intent to cause a financial loss to TransCanada greater than $10,000. Under the deferential standard of review, the evidence is sufficient.

IV

[¶15] Foster argues the State presented insufficient evidence that he had an agreement to intentionally cause loss greater than $10,000. The State's evidence is sufficient to prove Foster agreed with his co-defendant to "intentionally cause

7

financial loss greater than $10,000." *See* footnote 1 above. Section 12.1-06-04(1), N.D.C.C., provides:

> A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.

"An agreement may be implied based on the parties' conduct." *State v. Clark*, 2015 ND 201, ¶ 10, 868 N.W.2d 363 (quoting *State v. Cain*, 2011 ND 213, ¶ 10, 806 N.W.2d 597). But, an "agreement is not established by mere knowledge of an illegal activity, by mere association with other conspirators, or by mere presence at the scene of the conspiratorial deeds." *Id.* This Court has stated that "an agreement may be established by engaging in conduct while the offense is ongoing." *Id.* (citing *Cain*, at ¶ 12). In short, to "be guilty of conspiracy, one need only 'believe that he was participating in an agreement with another to engage in criminal conduct, manifested by some overt act.'" *Interest of J.A.G.*, 552 N.W.2d 317, 320 (N.D. 1996) (quoting *State v. Rambousek*, 479 N.W.2d 832, 835 (N.D. 1992)).

[¶16] The evidence of the agreement element of the conspiracy charge was compelling. A video played for the jury showed Foster and his co-defendant in a car, talking, while traveling on I-29 northbound to Pembina County. The two men were discussing plans for Foster to "chain the wheel shut after he has broken into the fenced enclosure and closed the valve wheel." Further, inside the notebook were sticky notes with names of multiple people associated with actions that were part of the coordinated event. Our review of the evidence in the light most favorable to the verdict shows the evidence was sufficient to convict Foster of conspiring with his co-defendant to cause a financial loss greater than $10,000 to TransCanada.

V

[¶17] Foster argues that his Exhibit B was erroneously kept out of evidence. The exhibit states, "Michael Foster acknowledges he knew that the pipeline shutdown would be temporary . . . they were merely trying to raise public awareness . . . The

8

valve-turners could not reasonably believe their illegal actions would have any long-term effect on the flow of tar sands oil into the U.S." The exhibit was created by Foster from the State's Brief in Support of Motion in Limine. Under N.D.R.Ev. 403, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . (b) confusing the issues." "The admission or exclusion of physical evidence is within the sound discretion of the district court, and the district court's decision thereon will not be disturbed on appeal absent an abuse of discretion." *State v. Cook*, 2018 ND 100, ¶ 12, 910 N.W.2d 179 (quoting *State v. Haugen*, 448 N.W.2d 191, 196 (N.D. 1989)); *Chisholm*, 2012 ND 147, ¶ 10, 818 N.W.2d 707.

[¶18] Statements made by attorneys are not evidence. *See King v. Railway Express Agency*, 107 N.W.2d 509, 517 (N.D. 1961). Much of the exhibit simply repeated statements by an attorney, which are not admissible evidence. The first sentence in the exhibit was a report of Foster's own statement, which he could have personally testified to at trial. The exhibit was taken from an argument the State made in a motion in limine on why Foster could not use the necessity defense, which was no longer an issue at trial. For this reason, the jury could have been confused by the exhibit had it been admitted into evidence. The district court did not abuse its discretion in sustaining the State's objection to enter Exhibit B into evidence.

VI

[¶19] Foster makes an argument regarding the documents Pollock has access to, and testified about, under the Sixth Amendment Confrontation Clause. We have considered this argument and conclude it is without merit.

VII

[¶20] There was no abuse of discretion, and the evidence was sufficient for a jury to have found Foster guilty beyond a reasonable doubt. We affirm the district court's judgment.

[¶21]   Jerod E. Tufte
        Daniel J. Crothers
        Lisa Fair McEvers

9

Jon J. Jensen
Gerald W. VandeWalle, C.J.