# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2020 ND 25

State of North Dakota,                                     Plaintiff and Appellee

v.

Corey Wickham,                                         Defendant and Appellant

### No. 20190144

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Gail Hagerty, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Joshua A. Amundson, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Russell J. Myhre, Enderlin, ND, for defendant and appellant.

**State v. Wickham**
No. 20190144

**Crothers, Justice.**

[¶1]  Corey Wickham appeals from a judgment entered after convictions for gross sexual imposition, arguing the district court erred by admitting expert opinion testimony. We affirm.

I

[¶2]  Wickham was working as a rideshare driver when he allegedly stopped a passenger from exiting his automobile, kissed her on the mouth, put his hands down her pants, digitally penetrated her, and touched her breasts. He was charged with two counts of gross sexual imposition. A jury found Wickham guilty on both counts.

[¶3]  On appeal Wickham argues the district court obviously erred by admitting opinion testimony from five witnesses without requiring the State to qualify them as experts. Wickham argues that without their testimony the evidence was insufficient to convict him.

II

[¶4]  Wickham concedes he did not object to the testimony at trial, and the appropriate standard of review is for obvious error. "This Court has previously noted that 'issues not raised at trial will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b).'" *State v. Pemberton*, 2019 ND 157, ¶ 8, 930 N.W.2d 125 (citing *State v. Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428). The obvious error standard is well established:

> "To establish obvious error, the defendant has the burden to demonstrate plain error which affected his substantial rights. To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established."

1

*Id.* (citing *Lott*, at ¶ 8) (quoting *State v. Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774).

[¶5] "When asserting a claim of obvious error, a defendant must show: (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights." *Pemberton*, 2019 ND 157, ¶ 9, 930 N.W.2d 125 (citing *State v. Wangstad*, 2018 ND 217, ¶ 14, 917 N.W.2d 515). "We exercise our power to consider obvious error cautiously and only in exceptional situations where the defendant has suffered serious injustice." *Pemberton*, at ¶ 9 (citing *State v. Glass*, 2000 ND 212, ¶ 4, 620 N.W.2d 146) (internal quotation marks omitted). "If evidence was admitted in error, this Court will consider the entire record and decide in light of all the evidence whether the error was so prejudicial the defendant's rights were affected and a different decision would have occurred absent the error." *State v. Saulter*, 2009 ND 78, ¶ 18, 764 N.W.2d 430 (citing *City of Fargo v. Erickson*, 1999 ND 145, ¶ 13, 598 N.W.2d 787).

[¶6] This Court has also noted the following regarding obvious error:

> "Even if the defendant meets his burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court, and the court should exercise that discretion only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law."

*Pemberton*, 2019 ND 157, ¶ 9, 930 N.W.2d 125 (citing *State v. Patterson*, 2014 ND 193, ¶ 4, 855 N.W.2d 113) (citations omitted).

### III

[¶7] Wickham argues the trial court obviously erred by admitting testimony from five witnesses without requiring the State to qualify them as opinion experts. Wickham argues the evidence was insufficient to convict him without their testimony.

[¶8] The State argues none of the witnesses testified under N.D.R.Ev. 702. Therefore, the trial court did not commit obvious error when it did not require the State to qualify them as experts before giving opinion testimony. The State further argues sufficient evidence supports Wickham's convictions.

A

[¶9] This Court has discussed three types of trial testimony as fact, lay opinion, and expert opinion. *See State v. Louser*, 2017 ND 10, ¶¶ 9, 11, 890 N.W.2d 1. Fact testimony comes from a witness who is competent and after "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *State v. Foster*, 2019 ND 28, ¶ 4, 921 N.W.2d 454; N.D.R.Ev. 601, 602. "Testimony that falls within the personal knowledge of the lay witness is different from opinion testimony, which is governed by N.D.R.Ev. 701." *Id.* "Under the North Dakota Rules of Evidence, lay witnesses may testify to observations or facts within their personal knowledge. Such testimony does not constitute opinion testimony." *Id.*

[¶10] The admission of lay opinion testimony is governed by N.D.R.Ev. 701, which states:

> "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception; and
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue."

[¶11] "Lay opinion testimony is limited to testimony that is 'rationally based on the perception of the witness.'" *Saulter*, 2009 ND 78, ¶ 12, 764 N.W.2d 430 (citing N.D.R.Ev. 701). Therefore, the witness must have observed the incident or have first-hand knowledge of the facts that form the basis of the opinion. *Id.* A lay witness's opinion must be based on his or her perception or personal knowledge of the matter. *Id.* The scope of permissible lay opinion testimony has been described as follows:

3

> "The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences."

*Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3rd Cir. 1995).

[¶12] In 2000, Federal Rule 701 was amended to include a requirement "that lay opinion testimony could not be based on scientific, technical or other specialized knowledge that is within the scope of Fed.R.Evid. 702." *Saulter*, 2009 ND 78, ¶ 10, 764 N.W.2d 430. Wickham argues Rule 701, N.D.R.Ev., is an adoption of Fed.R.Evid. 701, and we should follow the federal interpretation of the rule as persuasive authority. North Dakota has not adopted the limiting language from Federal Rule 701 and we refuse Wickham's invitation to engraft the federal restriction to our Rule 701 through this decision.

[¶13] Expert opinion testimony is governed by N.D.R.Ev. 702 and states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

"A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in the possession of the jurors.'" *Saulter*, 2009 ND 78, ¶ 11, 764 N.W.2d 430. "A witness's testimony is not necessarily expert testimony simply because the witness has specialized knowledge and was chosen to carry out an investigation because of that knowledge, the witness's testimony is expert testimony if the testimony is rooted exclusively in his expertise or is not a product[ion] of his investigation but instead reflects his specialized knowledge[,]" *Louser*, 2017 ND 10, ¶ 9, 890 N.W.2d 1 (citing *Saulter*, at ¶ 15).

4

[¶14] In *State v. Saulter*, this Court held the district court misapplied the law and abused its discretion by allowing Detective Vigness's opinion testimony because some was rooted exclusively in his expertise rather than as "a product of his investigation." 2009 ND 78, ¶ 15, 764 N.W.2d 430. Vigness testified domestic violence was his area of expertise, he had several hundred hours of training specific to domestic violence, and he was trained on strangulation crimes. He also testified about the symptoms of strangulation in general, that strangulation victims sometimes have difficulty articulating exactly what happened and may forget details, strangulation victims commonly do not realize how serious the crime is, and often do not seek medical treatment. *Id.* at ¶ 14. We noted, "Vigness primarily testified about strangulation crimes in general and not about this particular crime or his investigation of this crime." *Id.* "Vigness's testimony about strangulation in general was used to provide specialized explanations and was used as a foundation to support his opinions about what may have occurred and to answer hypothetical questions." *Id.* at ¶ 15.

[¶15] In *State v. Foster*, testimony by an oil company operations coordinator was based on personal knowledge and included permissible fact testimony notwithstanding his specialized knowledge and experience. 2019 ND 28, ¶ 4, 921 N.W.2d 454. Trevor Pollock was a manager for the TransCanada pipeline operation control center. *Id.* at ¶ 2. He testified against Michael Foster who was charged with conspiracy to commit criminal mischief, criminal mischief, and criminal trespass. *Id.* at ¶ 1. Pollock testified about his observations and activities as the operations coordinator on the day Foster closed the pipeline valve. *Id.* at ¶ 6. He testified about his duties which included monitoring pressure at various points in the system, monitoring and controlling pumps and automated valves, reviewing electronic logs, participating in meetings, responding to issues and generally operating the pipeline to achieve the target flow volume. *Id.* He also testified he knew that shipper's requests to transport oil exceeded pipeline capacity, and that on the day at issue the actual flow rate was 634,000 barrels per day. *Id.* at ¶¶ 6-7. Since Pollock was responsible for

monitoring and setting flow rates, the district court did not abuse its discretion in permitting him to testify to his personal knowledge about the flow rates, transport capacity, duration of the outage, and the volume of oil TransCanada lost the opportunity to transport. *Id.* at ¶ 7. This Court concluded, "Pollock's testimony was not expert testimony because it was not 'based on scientific, technical, or other specialized knowledge.'" *Id.* at ¶ 5.

[¶16] In *State v. Crissler*, the defendant challenged Officer Kuntz's testimony on the basis it was speculative. 2017 ND 249, ¶ 9, 902 N.W.2d 925. This Court concluded the testimony was admissible under N.D.R.Ev. 701. *Id.* Officer Kuntz testified the pencil found under the defendant's mattress was very flexible in its unaltered state, but was wrapped in wetted paper and wound with string to increase rigidity. *Id.* at ¶ 3. Further, there appeared to be underwear elastic around the pencil to make it easier to grip. *Id.* Kuntz further testified the sharpened, stiffened, and reinforced pencil could allow a person to stab another while simultaneously punching him. *Id.* We concluded the statements were testimony of Kuntz's perceptions, based on personal knowledge and observations of the pencil itself, and not based on scientific, technical, or specialized knowledge. *Id.* at ¶ 9.

C

1

[¶17] Here, Wickham broadly argues the district court erred by allowing five witnesses to testify as experts. Two of the witnesses, Kyle Splichal and Emily Hoge, are forensic scientists. They testified about the processes they followed to prepare materials and samples for DNA testing, and the DNA testing performed in this case. Like in *Foster*, Splichal and Hoge testified to their activities and observations as forensic scientists. Significantly, Splichal and Hoge did not provide opinion testimony, much less expert opinion testimony "based on scientific, technical, or other specialized knowledge." *Crissler*, 2017 ND 249, ¶ 7, 902 N.W.2d 925. "[T]estimony 'relating to purely physical facts requires no special qualification and does not come within the scope of expert opinion evidence.'" *Foster*, 2019 ND 28, ¶ 5, 921 N.W.2d 454 (citing *State v.*

*Engel*, 289 N.W.2d 204, 208 (N.D. 1980)). Because Splichal and Hoge testified about their work activities and provided no opinion, the trial court did not err by admitting Splichal's and Hoge's testimony.

2

[¶18] Forensic scientist Amy Gebhardt testified about her job duties, the number of DNA samples she has analyzed, her training and education, and her one unsatisfactory proficiency test. Gebhardt testified she analyzed the samples provided in this case, made the comparison results, and wrote the report. She explained how she conducted the tests and concluded a major contributor on L.A.'s underwear matched a known sample from Wickham.

[¶19] Gebhardt's testimony about how she prepared samples for testing and how she performed the testing was factual. That evidence about her work activities was not opinion testimony for the same reasons discussed above for witnesses Splichal and Hoge.

[¶20] Gebhardt also testified a major contributor of DNA found on L.A.'s underwear matched a known sample from Wickham. The district court was not asked to decide whether Gebhardt's answer to that question was an expression of an expert's opinion. The record does not provide us with sufficient information to decide this question as a matter of law. But, assuming without deciding Gebhardt's testimony about a DNA match was expert opinion testimony, we conclude the district court did not commit obvious error.

[¶21] "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established." *Pemberton*, 2019 ND 157, ¶ 8, 930 N.W.2d 125 (citing *Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428) (quoting *Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774). Here, Wickham has not brought to our attention, and we have not found, a clear statement of law providing a district court errs by not stopping a witness from testifying by way of a mix of permissible lay opinion testimony and arguably impermissible expert opinion testimony. Rather than providing a clear statement of law that

7

admission of undisclosed opinion testimony is error, our cases hold that evidentiary issues such as these are addressed to the district court's discretion. *See Crissler,* 2017 ND 249, 902 N.W.2d 925; *State v. Evans,* 2013 ND 195, 838 N.W.2d 605; *Saulter,* 2009 ND 78, 764 N.W.2d 430.

3

[¶22] Registered nurse Renae Sisk testified about her education and training as a sexual assault nurse examiner. She testified she has received between 200 and 300 hours of continuing education, including 40 hours of sexual assault training. Sisk testified that victim trauma responses are a "major part of our training." She explained different trauma responses such as fear, guilt, wondering what they could have done to prevent what happened, memory lapses, and could experience physical pain or physical symptoms of trauma. Sisk testified victims may delay reporting because during the assault they did not have control, but they do have control over whether they report the assault. Sisk also answered "no" to a more general question about injuries to vaginas, explained why the injury she saw on L.A. was not consistent with a normal sexual encounter, that patients can have bruising a few days after the assault, and that L.A.'s injury was consistent with forced digital penetration.

[¶23] Sisk testified about what occurs during a sexual assault exam, the process for the exam, that sexual assault nurse examiners do not make a diagnosis after the exam, and that her role as a sexual assault nurse examiner is objective.

[¶24] Sisk testified she performed the sexual assault exam on L.A., and described what she observed as a result of the examination. She testified the examination was stopped because L.A.'s pain became intolerable. She heard L.A.'s answers to the questions asked during the interview. She heard L.A. state she was digitally penetrated, that she showered after the assault, that she vomited, and that the level of pain was a seven out of ten.

[¶25] Like in *Foster,* Sisk's testimony describing her job activities and her observations during L.A.'s examination was not opinion evidence, and the trial

court did not err by admitting that portion of Sisk's testimony as fact evidence. *See* N.D.R.Ev. 602.

[¶26] Sisk's testimony about victim trauma, victim reporting, and that the injury in L.A.'s case was not consistent with a normal sexual encounter were conclusions based on her education, training and experience. Like in *Saulter*, these opinions should have been disclosed under N.D.R.Ev. 702 and the State should have otherwise complied with the requirements of a witness offering expert opinion testimony.

[¶27] However, unlike *Saulter* where the officer primarily testified about strangulation crimes rather than the particular crime or his investigation of the crime, Sisk's testimony was primarily about the exam she performed. Additionally, like *Certain Underwriters at Lloyd's London v. Sinkovich* cited in *Saulter*, *some of* Sisk's testimony regarding trauma responses, delayed reporting, or having bruising a few days after the assault may be properly characterized as lay opinions that "a normal person would form." *Saulter*, 2009 ND 78, ¶ 13, 764 N.W.2d (citing *Certain Underwriters at Lloyd's London v. Sinkovich*, 232 F.3d 200, 203-204 (4th Cir. 2000)). Therefore, Sisk's testimony was a mix of lay opinions permitted under N.D.R.Ev. 701, and expert opinions more stringently regulated under N.D.R.Ev. 702.

[¶28] To the extent Sisk's testimony included expert opinions, that evidence could have been excluded upon a timely objection. However, Wickham made no such objection and we are left to analyze whether the situation present at trial was such that the district court was required to prevent admission of the testimony without the assistance of an objection.

[¶29] "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established." *Pemberton*, 2019 ND 157, ¶ 8, 930 N.W.2d 125 (citing *Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428) (quoting *Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774). Here, Wickham has not brought to our attention, and we have not found, a clear statement of law

providing that a district court errs by not stopping a witness from testifying by way of a mix of permissible lay opinion testimony and arguably impermissible expert opinion testimony. Rather than providing a clear statement of law that admission of undisclosed opinion testimony is error, our cases hold that evidentiary issues such as these are addressed to the district court's discretion. *See Crissler*, 2017 ND 249, 902 N.W.2d 925; *Evans,* 2013 ND 195, 838 N.W.2d 605; *Saulter*, 2009 ND 78, 764 N.W.2d 430. Therefore, the district court in this case did not commit obvious error because it did not clearly deviate from an applicable legal rule or precedent in not stopping Sisk from providing the jury with minimal expert opinion testimony.

4

[¶30] Jon Lahr testified he is a detective for the Bismarck police department. He also testified about his education and training, and the number of interviews he has conducted. He testified that he investigated the sexual assault complaint by L.A. against Wickham, and that he interviewed Wickham and L.A.

[¶31] Like the other witnesses, much of Lahr's testimony recited what he saw and heard during his investigation. That was permissible fact testimony under N.D.R.Ev. 602.

[¶32] Lahr also testified about Wickham's appearance and behavior during the interview process. For example, Lahr testified that Wickham's story was inconsistent, Wickham was visibly shaking, and Wickham's tone changed as if he was talking out of the back of his throat like he was scared. From these observations, Lahr testified he believed Wickham was not being truthful. This testimony could be characterized as permissible lay opinions under N.D.R.Ev. 701.

[¶33] Lahr also was asked about his training on interview techniques and then applied his training to Wickham's case. On direct examination Lahr was asked, "[s]o, when you're trained on interview techniques, is that something that you're taught to notice, the body position and the squaring up?" He responded,

"Correct." He then was asked to explain why. Detective Lahr described when a person is trying to avoid a situation or conversation they typically turn themselves away or put something in front of themselves. He testified that Wickham did both. Detective Lahr was asked, "[s]o what other things are you noticing about his behavior that you've been trained to watch for in an interview?" He responded that police ask direct questions because they are looking for one-word answers and that "[a] truthful person would just simply say 'no' or 'yes.'" Lahr testified that in response to the question "At no point did you sexually assault her[?]" Wickham responded, "no, absolutely not."

[¶34] Based upon his training and experience, and from what he learned investigating this case, Lahr opined Wickham was being deceitful with him during his interviews. He testified he based his opinion on other evidence like the visitation between Wickham and his mother, and the DNA samples he swabbed and reviewed. Lahr testified, "[w]ith everything combined I came to the conclusion that he was being—that he lied to me during the interview and was not honest about what had happened."

[¶35] Here, Lahr expressed permissible lay opinions under N.D.R.Ev. 701 when he testified about how Wickham's shaking and tone of voice, and inconsistent story telling led Lahr to believe Wickham was not telling the truth. However, Lahr crossed the line into expert opinion testimony when, for example, he relied on specialized knowledge and training to form an opinion that Wickham's nonverbal communication and one-word answers were indicia of untruthfulness. This portion of Lahr's testimony should have been disclosed and qualified as expert opinion testimony.

[¶36] Having concluded admission of a part of Lahr's opinion testimony was error, the question becomes whether the district court committed obvious error and should have *sua sponte* stopped or limited Lahr's testimony.

[¶37] "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established." *Pemberton*, 2019 ND 157, ¶ 8,

11

930 N.W.2d 125 (citing *Lott*, 2019 ND 18, ¶ 8, 921 N.W.2d 428) (quoting *Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774). Like with Sisk and Gebhardt, Wickham has not brought to our attention, and we have not found, a clear statement of law providing that a district court errs by not stopping Lahr from testifying by way of a mix of permissible lay opinion testimony and arguably impermissible expert opinion testimony. Rather than providing a clear statement of law that admission of undisclosed opinion testimony is error, our cases hold that evidentiary issues such as these are addressed to the district court's discretion. *See Crissler*, 2017 ND 249, 902 N.W.2d 925; *Evans,* 2013 ND 195, 838 N.W.2d 605; *Saulter*, 2009 ND 78, 764 N.W.2d 430. Therefore, the district court in this case did not commit obvious error because it did not clearly deviate from an applicable legal rule or precedent in not stopping Lahr from providing the jury with minimal expert opinion testimony.

IV

[¶38] The district court did not err in admitting the testimony of Splichal and Hoge. To the extent the district court erred in admitting limited expert opinion testimony from Gebhardt, Sisk, and Lahr, the error was not obvious. We affirm the judgment.

[¶39] Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte
    Benny Graff, S.J.
    Jon J. Jensen, C.J.

[¶40] The Honorable Benny Graff, S.J., sitting in place of VandeWalle, C.J., disqualified.

12